FOREST CONSERVATION COUNCIL, Plaintiff—Appellant,

v.

UNITED STATES FOREST SERVICE, Defendant—Appellee,

and

Navajo County, Apache County, City of Winslow, Showlow Fire District, and American Forest Resource Council, Defendants—Intervenors—Appellees.

No. 03–16511.

D.C. No. CV–03–00054–FJM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 2004.

Decided Sept. 15, 2004.

Steven Sugarman, Santa Fe, NM, for Plaintiff–Appellant.

Ellen J. Durkee, Esq., U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, Defendant–Appellee.

Scott W. Horngren, Esq., Haglund Kirtley Kelley Horngren & Jones, LLP, Portland, OR, Melvin R. Bowers, Jr., for Defendants–Intervenors–Appellees.

Before PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge,
dissenting.

### MEMORANDUM [*]

We affirm the district court's grant of summary judgment to the United States Forest Service. It was not arbitrary or capricious for the agency to conclude that its "Roads and Trails" decision fell within the parameters of categorical exclusions 31.1(b)(3), (4) and (5). Nor was it arbitrary or capricious for the agency to conclude that its "Fence and Utility Line" decision fell within the parameters of categorical exclusions 31.1(b)(4) and 31.2(2). *See Alaska Ctr. for the Env't v. United States Forest Serv.,* 189 F.3d 851, 857 (9th Cir.1999) (agency interpretation of own categorical exclusion controls unless plainly erroneous or inconsistent with terms).

Because the agency was entitled to treat the "Wildland/Urban Interface" decision as a separate project, Forest Conservation Council's appeal from the denial of injunctive relief has been mooted by the completion of the environmental assessment for this project. *See Aluminum Co. of Am. v. Admin'r, Bonneville Power Admin.,* 175 F.3d 1156, 1163 (9th Cir.1999).

AFFIRMED.

PREGERSON, Circuit Judge,
dissenting.

Following Arizona's June 2002 Rodeo–Chediski fire, the Forest Service authorized tree removal on over 37,000 acres of National Forest land. Appellants claim that the Forest Service violated the National Environmental Protection Act ("NEPA") when it authorized the tree removal project without first conducting a proper Environmental Impact Statement ("EIS") or Environmental Assessment ("EA") to evaluate the project's environmental impact. Because I agree with Appellants that the Forest Service violated NEPA and disagree with my colleagues' conclusion to the contrary, I dissent.

### I.

NEPA established a complex system for evaluating environmental management decisions and the environmental effects of proposed federal agency actions. *See* 40 C.F.R. §§ 1500–08. Depending on a proposed project's "effect on the human environment," NEPA and Council on Environmental Quality ("CEQ") regulations authorize federal agencies to fulfill their NEPA requirements in one of three ways.[1] First, an agency may prepare an EIS, *see* 40 C.F.R. § 1501.3, which, if properly completed, will always satisfy an agency's NEPA requirements, *see City of Carmel–by–the–Sea v. U.S. Dep't of Trans.,* 123 F.3d 1142, 1150 (9th Cir. 1997). Second, an agency may prepare a

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. NEPA created the CEQ, which is the agency that administers NEPA and promulgates environmental regulations. 42 U.S.C. §§ 4342, 4344(3).

less-rigorous EA. *See* 40 C.F.R. § 1508.9. If the EA supports a Finding of No Significant Impact on the environment, the EA satisfies the agency's NEPA obligations in lieu of an EIS. *See Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1224 (9th Cir.1988). Finally, NEPA and CEQ regulations allow agencies to avoid the preparation of either an EIS or an EA if a proposed action properly falls within a Categorical Exclusion. *See* 40 C.F.R. §§ 1501.4(a)(2) & (b); *see also West v. Sec'y of Dep't of Trans.*, 206 F.3d 920, 926–27 (9th Cir.2000) (describing NEPA requirements).

## II.

In this case, the Forest Service did not prepare an EIS or an EA to evaluate the environmental impact of the tree removal project. Instead, the Forest Service divided the project into three sub-parts and authorized each sub-part under the Categorical Exclusions enumerated in its Handbook. *See generally* Forest Service Handbook. The Forest Service explained its decisions to do so in three separate memoranda—the "Roads and Trails," "Fence and Utility Line," and "Wildland/Urban Interface" decision memoranda. As a threshold matter, I disagree with the Majority's approval of the Forest Service's "divide and conquer" use of Categorical Exclusions. *Cf. United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The Majority holds that the Forest Service "was entitled to treat the 'Wildland/Urban Interface' decision as a separate project" and that Appellant "Forest Conservation Council's appeal from the denial of injunctive relief has been mooted by the completion of the environmental assessment for this project." In my view, the Majority's conclusion is erroneous. "NEPA ... prohibit[s] an agency from breaking up a large or cumulative project into smaller components in

order to avoid designating the project a major federal action" that would be subject to NEPA analysis requirements. *Churchill v. Norton*, 276 F.3d 1060, 1076 (9th Cir.2001); *see also Nat'l Wildlife Fed'n v. Appalachian Reg'l Comm'n*, 677 F.2d 883, 890 (D.C.Cir.1981); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 240 (3d Cir.1980). The record is replete with evidence—albeit mostly circumstantial—supporting Appellant's contention that the Forest Service considered the three projects to be one and divided the project into three sub-parts to avoid NEPA analysis requirements and to survive litigation. Because, in my view, the Forest Service's decision to "break[ ] up" the tree removal project so as "to avoid designating the project a major federal action" was improper, *see, e.g., Churchill*, 276 F.3d at 1076, I would hold that Appellant's challenge to the Forest Service's "Wildland/Urban Interface" decision is not moot and that the Forest Service is required to prepare either an EIS or an EA for the aggregated tree removal operation as a whole. *Compare Aluminum Co. of Am. v. Admin'r, Bonneville Power Admin.*, 175 F.3d 1156, 1163 (9th Cir.1999) (holding that compliance with NEPA during the pendency of litigation challenging an agency's failure to comply with NEPA will moot the challenge to the agency's actions and the accompanying request for injunctive relief), *with Blue Mountain Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1214–15 (9th Cir.1998) (holding that appeal challenging an EA concerning one part of a five-part project was not moot where the Forest Service erred in segmenting project and not analyzing it under NEPA as a whole).

## III.

Even if I were to agree that the Forest Service properly divided the tree removal

project into three sub-parts (which, for the reasons above I do not), I cannot agree with the Majority's determination that the Forest Service's use of Categorical Exclusions was not "arbitrary and capricious." 5 U.S.C. § 706(2)(A). In *West*, we concluded that the authorization of "an entirely new, $18.6 million, four-lane, 'fully-directional' interchange constructed over a former Superfund site and requiring 500,-000 cubic yards of fill material, 30,000 tons of crushed surfacing, and 32,000 tons of asphalt concrete pavement" was an arbitrary and capricious application of the Federal Highway Administration's Categorical Exclusion for "changes in [highway] access control." 206 F.3d at 928. In particular, we found that "[n]one of the examples" of projects properly authorized by the Categorical Exclusion—"resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes;" "the installation of ramp metering control devices and lighting;" and "bridge rehabilitation, reconstruction or replacement or the construction of grade separation to replace existing at-grade railroad crossings,"—"approache[d] the magnitude of th[e]" Federal Highway Administration's interchange project. *Id.*

Bound as we are by *West*, I cannot agree with the Majority's determination that the Forest Service's "Roads and Trails" and "Fence and Utility Line" decisions were properly authorized by the Forest Service's Categorical Exclusions. Nor can I find that the Forest Service's "Wildland/Urban Interface" decision was properly authorized by the Forest Service's Categorical Exclusions.[2]

The removal of trees on 14,951 acres of National Forest land, as authorized by the Forest Service's "Roads and Trails" deci-

sion, has nothing to do with the examples of actions properly excludable under the Categorical Exclusions listed in the Forest Service's Handbook: e.g., mowing lawns, replacing roofs, painting buildings, applying pesticides, resurfacing roads, grading a road, pruning vegetation, posting landline boundaries, applying herbicides to control poison ivy in camp grounds, applying insecticides at recreation sites, repaving a parking lot, and applying pesticides for rodent or vegetation control. *See* Forest Service Handbook 1909.15, §§ 31.1(b)(3), (4), & (5). Similarly, the removal of trees on 3,008 acres of National Forest land, as authorized by the Forest Service's "Fences and Utility Lines" decision, has nothing to do with the examples of actions properly excludable under the Categorical Exclusions listed in the Forest Service's Handbook: e.g., resurfacing roads, grading a road, pruning vegetation, posting landline boundaries, replacing an underground cable trunk, or reconstructing a power line. *See* Forest Service Handbook 1909.15, §§ 31.1(b)(4) & 31.2(2). Finally, the removal of trees on 19,365 acres of National Forest land, as authorized by the Forest Service's "Wildland/Urban Interface" decision, has nothing to do with the examples of actions properly excludable under the Categorical Exclusions listed in the Forest Service's Handbook: e.g., thinning or brush control to improve growth or to reduce fire hazard, the opening of an existing road to a dense timber stand, and prescribed burning. *See* Forest Service Handbook 1909.15, § 31.2(6). In this respect, I agree with the district court that the Forest Service's "Wildland/Urban Interface" decision was not properly authorized by the Forest Service's Categorical Exclusions. *See Forest Conservation*

---

2. As noted above, the Majority did not evaluate the propriety of the Forest Service's use of Categorical Exclusions to authorize the

"Wildland/Urban Interface" decision because it found the issue moot.

*Council v. U.S. Forest Serv.,* No. CV–03–0054–PCT–FJM, 2003 WL 23281957, *3–*4 (D.Ariz. July 9, 2003). "[T]he Forest Service's interpretation of categorical exclusion 31.2(6) [and application to its Wildland/Urban Interface decision] is inconsistent with its terms and is therefore plainly erroneous." *Id.* None "of the examples [given in the Forest Service's Handbook] support such a vast program." *Id.* at *3.

## IV.

Because I believe that the Majority has improperly relieved the Forest Service of its obligation to properly evaluate with either an EIS or an EA the environmental impact of its tree removal operation, I respectfully dissent.